## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JENNIFER DONOVAN and
DANIEL DONOVAN,

        Plaintiffs,

v.

MIDORI PRODUCTS LLC,
KDDS ENTERPRISES LLC,
DAVID SEMAN, WILLIAM DEEDS,
RYAN RANDOLPH, RYAN COOK,
ADAM JAFFE, ANTHONY NUZZO,
EMILY HALES, and CASEY YOUNG,

        Defendants.

Case No.
Hon.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
Attorneys for Plaintiff
617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com
kara@hurwitzlaw.com

---

## PLAINTIFFS' COMPLAINT AND JURY DEMAND

Plaintiffs JENNIFER DONOVAN and DANIEL DONOVAN, by and through their attorneys, HURWITZ LAW PLLC, bring this action against Defendants and state the following:

## INTRODUCTION

1.     This lawsuit arises out of Defendants' mistreatment of and retaliation against the married Plaintiffs, Daniel Donovan and Jennifer Donovan, after they opposed the unlawful conduct of their boss and Ms. Donovan's business partner, Defendant David Seman.  Mr. Seman

retaliated against Plaintiffs in many forms, including threatening to "slit their throats," terminating their employment, withholding business expense reimbursements, breaching contractual obligations owed to Ms. Donovan, violating Ms. Donovan's minority shareholder rights, and attempting to orchestrate Ms. Donovan's expulsion from his companies.

## PARTIES

2.      Plaintiff Jennifer Donovan (hereafter "Mrs. Donovan") is a Michigan resident    of Clare County, Michigan, and a former employee of Defendant Midori Products, LLC.

3.      Plaintiff Jennifer Donovan is a minority shareholder of Defendant Midori Products, LLC.

4.      Plaintiff Jennifer Donovan is a minority shareholder of Defendant KDDS Enterprises, LLC.

5.      Plaintiff Daniel Donovan (hereafter "Mr. Donovan") is a Michigan resident of Clare County, Michigan, and a former employee of Defendant Midori Products, LLC.

6.      Defendant, Midori Products LLC, is a domestic limited liability company with its registered agent located in Royal Oak, Oakland County, Michigan.

7.      Defendant, KDDS Enterprises LLC, is a domestic limited liability company with its registered agent located in Royal Oak, Oakland County, Michigan.

8.      Defendant, David Seman, is or was at all relevant times, an owner, a Member, and the CEO of Defendant Midori Products, LLC and a Member of Defendant KDDS Enterprises, LLC.

9.      Defendant, William Deeds, is or was at all relevant times, a Member of Defendant Midori Products, LLC and a Member of Defendant KDDS Enterprises, LLC.

10.     Defendant, Ryan Randolph, is or was at all relevant times, a Member and employee of Defendant Midori Products, LLC and a Member of Defendant KDDS Enterprises, LLC.

11.     Defendant, Ryan Cook, is or was at all relevant times, a Member of Defendant Midori Products, LLC and a Member of Defendant KDDS Enterprises, LLC.

12.     Defendant, Adam Jaffe, is or was at all relevant times, a Member of Defendant Midori Products, LLC and a Member of Defendant KDDS Enterprises, LLC.

13.     Defendant, Anthony Nuzzo, is or was at all relevant times, a Member of Defendant Midori Products, LLC and a Member of Defendant KDDS Enterprises, LLC.

14.     Defendant, Emily Hales, is or was at all relevant times, a Member of Defendant Midori Products, LLC and a Member of Defendant KDDS Enterprises, LLC.

15.     Defendant, Casey Young, is or was at all relevant times, a Member of Defendant Midori Products, LLC and a Member of Defendant KDDS Enterprises, LLC.

## JURISDICTION AND VENUE

16.     This Court's jurisdiction is invoked pursuant to 42 U.S.C. 2000e (Title VII of the Civil Rights Act), 28 U.S.C. 1331 (federal question jurisdiction), 28 U.S.C. 1343(a)(4) (jurisdiction over civil rights claims).

17.     Venue is proper in this Court pursuant to 28 U.S.C. 1391 because Defendants obligated themselves to Plaintiffs within the Western District of Michigan, Plaintiffs were employed by Defendants within the Western District of Michigan, and the actions giving rise to this lawsuit occurred in Benzie County which is located within the Western District of Michigan.

18.     Supplemental jurisdiction over Plaintiffs' state-law claims is proper pursuant to 28 U.S.C. 1367 as they arise from the same case and controversy.

19.     Plaintiff Daniel Donovan filed a timely charge of discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC).

20.     Plaintiff Daniel Donovan received notice of his right to sue on August 5, 2022 and brings this Complaint within 90 days of his receipt of his notice of right to sue.

21.     Plaintiff Jennifer Donovan filed a timely charge of discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC).

22.     Plaintiff Jennifer Donovan received notice of her right to sue on August 5, 2022 and brings this Complaint within 90 days of her receipt of her notice of right to sue.

**GENERAL ALLEGATIONS**

23.     Plaintiffs, Daniel Donovan ("Mr. Donovan"), and Jennifer Donovan ("Mrs. Donovan") are a married couple and former employees of Defendant Midori Products, LLC.

24.     Mrs. Donovan began her employment with Defendant Midori Products, LLC in March 2019 as the Chief Operations Officer.

25.     Mr. Donovan began his employment with Defendant Midori Products, LLC in January 2020.

26.     Mrs. Donovan is also a minority shareholder of Defendants Midori Products, LLC and KDDS Enterprises, LLC.

27.     Mrs. Donovan has a 15% ownership interest in KDDS Enterprises LLC.

28.     Mrs. Donovan has a 15.79% ownership interest in Midori Products LLC.

29.     At all relevant times, Mrs. Donovan and Defendant Seman were the only two "Managing Members" of Defendant Midori Products LLC.

30.      At all relevant times, Mrs. Donovan, Defendant Seman, and Defendant Deeds were the only three "Managing Members" of Defendant KDDS Enterprises, LLC.

31.     Defendant David Seman, a part owner and the CEO of Defendant Midori Products LLC, moved his primary residence from Chicago, Illinois to Benzonia, Michigan in August 2020.

32.     Within days of his move to Benzonia, Defendant Seman began to berate, humiliate, and harass Mrs. Donovan on a regular basis.

33.     For example, on August 13, 2020, Defendant Seman met with Mrs. Donovan, demanded that she find him something to eat, and became upset with her when local restaurants were closed due to the COVID-19 pandemic.

34.     On August 29, 2020, Defendant Seman confronted Mrs. Donovan in the company parking lot, yelling at her and accusing her of "blowing him off."

35.     Defendant Seman yelled so loudly and aggressively that bystanders overheard him and asked Mrs. Donovan if she was okay.

36.     On August 31, 2020, Defendant Seman met with Mrs. Donovan to discuss the members' and employees' roles in the company.

37.     This meeting devolved into an argument during which Defendant Seman became so angry that he chased Mrs. Donovan down the hallway, out of the building, and into the parking lot while yelling at her.

38.     At least two other employees heard Defendant Seman yell "fuck you!" as he chased Mrs. Donovan.

39.     Again, Defendant Seman had yelled so loudly and aggressively that those people later asked Mrs. Donovan if she was okay.

40.     Mrs. Donovan was extremely shaken by these events and decided to take a couple of days off of work to recuperate.

41.     However, on September 1, 2020, Mrs. Donovan found that she was the only manager available to manage the store.

42.     That day, while managing the store, Mrs. Donovan participated in a conference call with Ms. Katie Craig, Defendant Seman, and Defendant Will Deeds.

43.     When Defendant Seman heard that Mrs. Donovan was managing the store, he became irate and yelled at Mrs. Donovan.

44.     Mrs. Donovan disconnected from the call because of Defendant Seman's anger.

45.     Mrs. Donovan later learned that after she hung up, Defendant Seman had threatened to "slit [her] throat" and "slit [Mr. Donovan's] throat."

46.     Defendant Seman had also stated to the other participants on the call that they were "lucky he didn't have his gun on him."

47.     After the call, Ms. Craig and Defendant Deeds both individually contacted Mrs. Donovan to warn her that Defendant Seman was going to come to the company shop.

48.     On September 11, 2020, Mr. and Mrs. Donovan learned that Defendant Seman had sexually harassed another employee of Midori Products LLC, Katie Craig, during a dinner meeting held at The Wild Tomato at Crystal Mountain Resort in Thompsonville, Michigan.

49.     Ms. Craig's job title for Midori Products LLC was Director of Investor Relations.

50.     Ms. Craig was also a minority shareholder of Defendants Midori Products LLC and KDDS Enterprises, LLC.

51.     Ms. Craig reported directly to Defendant Seman as her supervisor/manager.

52.     Ms. Craig had also been employed by Defendant Seman for the previous two years with another company owned by Defendant Seman, Paladin Political Group.

53.     Mrs. Donovan told Ms. Craig that she could make a formal report of the harassment.

54.     On September 14, 2020, Ms. Craig made a formal complaint of Defendant Seman's

sexual harassment.

55.     Ms. Craig sent Mrs. Donovan an email stating:

On Friday night Dave and I discussed ways in which we could all operate and communicate more effectively moving forward. After dinner and dropping off dessert to Christine [Defendant Seman's girlfriend], Dave insisted on walking me back to my hotel room. Though I expressed ho tired I was on multiple instances and that I simply wanted to go to bed, Dave said that I needed to stay and listen to him in the parking lot as he had no one else to talk to.

We sat out in the parking lot for a couple hours as Dave discussed many elements of our business, but then veered into the personal as he explained he was upset with his girlfriend for not wanting to have threesomes anymore. He explained that his first favorite thing about threesomes was getting to be with two women, and his second favorite thing was watching the women arouse each other. Dave explained that he was upset his girlfriend no longer wanted a lifestyle of "cocaine and random waitresses" and that he she give him no say in the situation. Dave also reiterated how "good of a catch" he is, because he "just wants to give women orgasms and cookies." The orgasms and cookies line is a reference to a story he told me some time ago about how after all his
third dates, when he figures out how to make the specific woman orgasm, he likes to make her cookies while she showers afterward. On this evening in specific, he also told me that I was "glowing" so I "must be getting laid."

Dave has made several uncomfortable comments regarding women in the two years I have worked for him. Just last Tuesday, he called me to discuss Midori operations and referred to our other partner, Jennifer, as a "bitch" at least 6 times. Dave not only makes disparaging remarks against women, he exudes aggression on a regular basis creating a hostile work environment. On a conference call two weeks ago, along with our partner Will Deeds, Dave found out our partner Jennifer was working at the shop when she was potentially going to have the day off. Dave began screaming profanities regarding Jennifer and her husband, Dan, and at one point said he was going to "slit their throats." He then told Will and I that we were "lucky he didn't have his gun with him." When Will asked if Dave actually had a gun with him, Dave aggressively responded "I don't have to answer that."

I feel it is my duty to record these interactions as I fear this hostile work environment is not only threatening and discriminatory to women, but the violent outbursts are dangerous to all.

56.     Mrs. Donovan forwarded Ms. Craig's report to Defendant Deeds.

57.     Mrs. Donovan also forwarded Ms. Craig's report to legal counsel.

58.     Legal counsel commenced an investigation into Ms. Craig's complaint.

59.     Defendant Seman confirmed that he had made the comments reported by Ms. Craig.

60.     On September 23, 2020, Mrs. Donovan participated in an interview as part of the investigation into Defendant Seman's harassment.

61.     Mrs. Donovan confirmed her knowledge of the events that had occurred at the dinner between Defendant Seman and Ms. Craig on September 11, 2020.

62.     Mrs. Donovan also confirmed that Defendant Seman had made violent threats towards her and her husband.

63.     At the conclusion of the investigation, legal counsel concluded that "if [Defendant Seman's] comments or behavior were to continue, they could very well rise to the level of a hostile work environment" and recommended that the company take immediate remedial and corrective action.

64.     Defendant Deeds decided that Ms. Craig would report to him directly, instead of to Defendant Seman, from then on.

65.     Defendant Deeds then sent Ms. Craig an official response from Midori Products LLC without consulting Mrs. Donovan.

66.     In his response, Defendant Deeds told Ms. Craig that Defendant Seman's harassment had been an "isolated incident" and purported that the company would schedule mandatory sexual harassment training for all staff.

67.     Defendant Deeds then hired a C-suite consulting team called Silverman Consulting to address the issues with Defendant Seman.

68.     On October 13, 2020, Defendant Deeds informed Plaintiffs and the other managers that he had scheduled a meeting between Silverman Consulting and all of the Midori Products, LLC managers to take place the next day, October 14.

69.     On October 13, 2020, Mr. Donovan sent an email to Defendant Deeds, stating:

Hi Will,
I am sending you this email because I am extremely uncomfortable because several of my moral and ethical boundaries have been crossed over the last few weeks and it is making me very uneasy. I am telling you bluntly. I believe the way this is being handled is wrong. Let me refresh your memory of the toxicity of our CEO:

1. He sexually harassed another member of the management team.
2. He has impeded the investigation of said incident. He has even gone above that to soil the process by unilaterally deciding to engage labor lawyers. That's atrocious behavior.
3. He screamed at a managing partner in front of several employees and customers. He bullied her and used aggressive language to the point that several people asked me if we need to ban him from the store.
4. He doubled down on his aggression by showing up the next day and proceeded to scream and intimidate the same manager in front of several employees again. Most of our employees loathe Dave for this unchecked act of aggression against a woman.
5. He threatened to slit my wife's throat and my throat.

All of the above is enough to get Richard Branson fired as CEO of Virgin. How do you think it saves Dave Seman? A man who has hindered the growth of our company at every turn. Now you are trying to bring in expensive consultants to fix this when you claim we don't have enough money to pay a compliance offer that we desperately need. Listen to us on the ground WE NEED A COMPLIANCE PERSON.
Talking father to father and husband to husband, you have to see the problem. You have a daughter and you have a wife. How would you feel if you found out all of the above happened to your family and nothing tangible is being done about it? You know that Dave is wrong. I have seen how he treats women. Its [sic] disgusting. You know Katie. I consider her a friend and I definitely respect her as a colleague, don't you? Don't you respect Jenny as [sic] colleague? The masaginistic [sic] culture has to stop. Please think this through. I know you're a good dude, just have the courage to do what you know is right.

If you would like to discuss this over the phone no problem. I wanted to keep this between you and me, no reason to put you on the spot. I don't think you're a bad dude Will, this is a tough situation, but you know what's right. Thanks for listening. Dan"

70.     During the meeting with Silverman Consulting on October 14, 2020, Defendant Seman stated that he would "never" sign any document with Mrs. Donovan's name on it.

71.     Mrs. Donovan then met individually with employees of Silverman Consulting on October 14, 2020.

72.     During Mrs. Donovan's interview with Silverman Consulting, she discussed the events that had occurred with Defendant Seman and how she felt that Defendant Seman and Defendant Deeds' actions placed the companies in a "vulnerable" position.

73.     On October 18, 2020, Defendants terminated Mr. Donovan's employment.

74.     Defendant Deeds sent Mrs. Donovan an email stating:

Jenny, Silverman Consulting has made the recommendation to the company that we should terminate Dan Donovan. Therefore, in the best interest of Midori Products, LLC, we need to terminate Dan's employment with the organization immediately.

Since Dan Donovan reports directly to you, it is your responsibility to notify him of this decision. Upon termination of his employment, the Company will need to get the following from Dan:

1.      For Benzie Provisions, LLC - The company will need a complete list of vendors (name and address) and the primary contact (Name, email and phone number) at each company that Dan had contact with that either has or may provide product or services to the dispensary business.
2.      For Midori Products, LLC -  The company will need a complete list of vendors (name and address) and the primary contact there (Name, email and phone number) at each company that Dan had contact with that has or may provide product or services to the processing business.
3.      Any unpaid invoices or expenses incurred on behalf of the Companies by Dan will need to be submitted.  These expenses and any current expenses due to him will be reimbursed in a timely manner.
4.      Return of keys to dispensary and any other company property.

In addition, Dan Donovan shall be informed he shall not return to the business for any reason. If he has personal items on the property, then you may return those to him. If you feel uncomfortable or unwilling to inform Dan Donovan of the Company's decision, then please let us know immediately so we can take action.

75.     Despite Defendant Deeds' acknowledgement of the obligation to reimburse Mr. Donovan for expenses, Defendants failed to reimburse Mr. Donovan for authorized work expenses totaling $27,492.73. (Ex. 1, Donovan Invoice)

76.     Defendants had previously reimbursed Mr. Donovan for such expenses on March 1, April 3, June 18, August 7, and August 12, 2021.

77.     On October 19, 2020, on a Zoom meeting with Silverman Consulting and the Midori Products managers, Defendant Seman again belittled and screamed at Mrs. Donovan.

78.     Defendant Seman screamed at Mrs. Donovan that she had brought "an abusive marriage" into the business.

79.     Defendant Seman continued to scream at and berate Mrs. Donovan until one of the Silverman Consulting employees interrupted his tirade.

80.     In November 2020, Defendant Seman told Mrs. Donovan of his intent to force Ms. Craig out of the company by holding a capital call and forcing Ms. Craig to either lose or significantly devalue her shares of the company.

81.     In December 2020, a Silverman Consulting employee told Mrs. Donovan that some of her key marketing responsibilities would be taken away from her and reassigned to Defendant Seman.

82.     The consultant told Mrs. Donovan to "stay in [her] lane."

83.     Bearing this advice in mind, on December 17, 2020, Mrs. Donovan attended a scheduled construction walk-through, but stayed only briefly because construction was no longer in her portfolio.

84.     On December 18, 2020, Defendant Seman called Mrs. Donovan, connected Defendant Deeds, and began to question Mrs. Donovan about why she had not stayed for the duration of the construction walk-through.

85.     Mrs. Donovan advised that she was taking the consultant's advice to "stay in her lane" to heart.

86.     Defendant Seman continued to berate Mrs. Donovan, stating that Mrs. Donovan was making too much money, that Mrs. Donovan 'did not have a real lawyer,' that Mrs. Donovan was 'unprofessional', and that Mrs. Donovan should expect to receive separation documents soon.

87.     On December 24, 2020, Mrs. Donovan received an email informing her that the company would be holding a capital call and that she would have 30 days to raise 15.8% of $600,000 to cover remaining costs.

88.     On January 5, 2021, Defendant Seman stated that Mr. Donovan had been terminated "because he put things into email that should never have been emailed."

89.     Defendant Seman also stated to Mrs. Donovan on January 5, 2021 that it would "take a lot to forgive [Mrs. Donovan] for the role [she] played during the investigation" into Defendant Seman's harassment of Katie Craig.

90.     On January 14, 2021, Defendants terminated Mrs. Donovan's employment, despite her ownership interest in the company and the considerable value she added to the company as a licensing sponsor.

91.     On March 8, 2021, Mr. Donovan filed a Charge of Discrimination with the Equal Employment Opportunity Commission against Defendant Midori Products LLC, alleging sex discrimination and retaliation.

92.     On March 9, 2021, Mrs. Donovan filed a Charge of Discrimination with the Equal Employment Opportunity Commission against Defendant Midori Products LLC, alleging sex discrimination and retaliation.

93.     On April 6, 2021, Defendants attempted to expel Mrs. Donovan from her membership in Midori Products, LLC and KDDS Enterprises, LLC.

94.     Defendant Deeds sent Mrs. Donovan an email stating:

Dear Jennifer,
This email is to notify you of the actions taken by the members of Midori Products, LLC and KDDS Enterprises, LLC as indicated by the following two documents that are attached:
1. Consent of the members of Midori Products, LLC in lieu of a Meeting whereby the members unanimously voted to expel you as a member.
2. Consent of the members of KDDS Enterprises, LLC in lieu of a Meeting whereby the members unanimously voted to expel you as a member.
Pursuant to Section 8.2 of each operating agreement, if a member is expelled, that member shall be compensated for its ownership interest as determined by the formula described in Section 6.12(b) and (c) of the Operating Agreement…
Attached is a statement of Book Value for both Midori Products, LLC and KDDS Enterprises, LLC as of December 31, 2020 prepared by Mueller & Co., the companies' certified public accountant, for your reference. You will note that the statement reports that each company has a negative number for Book Value as of December 31, 2020. Therefore, you will not be receiving any distributions now or in the future and will receive zero compensation for your ownership interest in either Midori Products, LLC or KDDS Enterprises, LLC.
The company will be notifying the Michigan Marijuana Regulatory agency and local municipality that you are no longer an owner of the various companies licensed to operate in the Michigan cannabis industry. We will be requesting your name be taken off any and all licenses immediately.

95.     Defendant Deeds' email omitted controlling language contained in Section 6.12 of the Midori Products LLC and KDDS Enterprises, LLC Operating Agreements providing that a member may only be expelled:

 if the member engages in theft, dishonest or fraudulent action resulting or intended to result, directly or indirectly, in any demonstrable material harm to the Company and/or if the Member fails to comply with all applicable state and federal laws, including state and federal securities laws and regulations, medical marihuana licensing laws and regulations, and the rules and regulations of LARA, which

includes and is not limited to all requirements that the Company and its members must abide by to hold any license issued by the State of Michigan.

(Ex. 2, Midori Products LLC Operating Agreement; Ex. 3, KDDS Enterprises LLC Operating Agreement)

96.   Mrs. Donovan had not engaged in any such activity.

97.   Defendant Deeds' email also disregarded the procedural mechanism for expulsion

of members provided for in the Operating Agreements:

 a member being expelled by the Company is entitled to receive as a distribution in exchange for the Member's Membership Interest an amount equal to fifty percent (50%) of the …Book Value, as calculated pursuant to Section 6.6.(B), based on figures for the fiscal year ending immediately prior to the year the written notice of expulsion is issued by the Company, as it pertains to that Member's Membership interest.

(Ex. 2; Ex 3)

98.   Defendant Deeds' email misrepresented the correct formula for calculating the

"Book Value."

99.   Defendant Deeds' email disregarded the Operating Agreements' Section 6.6(b),

which provides that:

If the parties to the transaction do not agree on the calculation of Book Value, upon the demand of any party, the parties shall attempt to agree on the selection of a certified public accountant to be hired for the purpose of calculating Book Value (who may also hire a real estate appraiser for determining real estate values), and whose determination is binding on all parties. If the parties are unable to agree on the selection of a certified public accountant within fifteen (15) days after the demand, any party may demand arbitration pursuant to Section 11.1.

(Ex. 2; Ex. 3)

100.   Pursuant to the Operating Agreements, Mrs. Donovan rejected her expulsion from

the companies and contested the statement of Book Value prepared by Defendants.

**COUNT I**
**RETALIATION IN VIOLATION OF**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

**42 U.S.C. 2000(e)(3)(a)**
***(against Defendants KDDS Enterprises LLC, Midori Products LLC, William Deeds, and Dave Seman)***

101.   Plaintiffs incorporate the preceding allegations as if fully set forth herein.

102.   At all relevant times, Defendants were employers with greater than 15 employees and Plaintiffs were employees covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b).

103.   Plaintiffs engaged in protected activity by opposing Defendant Seman's sexual harassment of Katie Craig and participating in the investigation of Defendant Seman's conduct.

104.   Defendants subjected Plaintiffs to adverse employment actions including terminating both Plaintiffs' employment.

105.   Defendants' actions were motivated by unlawful retaliation against Plaintiffs due to their protected activity.

106.   But for Plaintiffs' protected activity, Defendants would not have subjected them to such adverse actions.

107.   Defendants' actions were taken in reckless disregards of Plaintiffs' federally protected civil rights, entitling Plaintiffs to punitive damages.

108.   As a direct and proximate result of Defendants' actions, Plaintiffs have been placed in financial distress and have suffered a loss of earnings and benefits, impairment of their earning capacity and ability to work, and will so suffer in the future.

109.   As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, and embarrassment, and will so suffer in the future.

**COUNT II**
**RETALIATION IN VIOLATION OF**

## MICHIGAN'S ELLIOT-LARSEN CIVIL RIGHTS ACT
### M.C.L. 37.2202(a)(1)
### *(against Defendants Benzie Provisions LLC, KDDS Enterprises LLC, Midori Products LLC, William Deeds, and Dave Seman)*

110.    Plaintiffs incorporate the preceding allegations as if fully set forth herein.

111.    At all relevant times, Defendants were employers and Plaintiffs were employees covered by and within the meaning of the Elliott-Larsen Civil Rights Act, M.C.L. 37.2202 *et seq.*

112.    Plaintiffs engaged in protected activity by opposing Defendant Seman's sexual harassment of Katie Craig and participating in the investigation of Defendant Seman's conduct.

113.    Defendants subjected Plaintiffs to adverse employment actions including terminating both Plaintiffs' employment.

114.    Defendants' actions were motivated by unlawful retaliation against Plaintiffs due to their protected activity.

115.    But for Plaintiffs' protected activity, Defendants would not have subjected them to such adverse actions.

116.    As a result of Defendants' conduct, Plaintiffs have suffered financial losses and emotional distress as described herein.

### COUNT III
### BREACH OF CONTRACT
### *(by Plaintiff Jennifer Donovan against all Defendants)*

117.    Plaintiff Jennifer Donovan incorporates the preceding allegations as if fully set forth herein.

118.    Defendants Midori Products LLC and the individual Defendants entered into a valid contract (Ex. 2, Midori Products LLC Operating Agreement) with Plaintiff Jennifer Donovan.

119.    Defendants KDDS Enterprises LLC and the individual Defendants entered into a valid contract (Ex. 3, KDDS Enterprises LLC Operating Agreement) with Plaintiff Jennifer Donovan.

120.    Both Operating Agreements provide that a Member may only be expelled:

if the Member engages in theft, dishonest or fraudulent action resulting or intended to result, directly or indirectly, in any demonstrable material harm to the Company and/or if the Member fails to comply with all applicable state and federal laws, including state and federal securities laws and regulations, medical marihuana licensing laws and regulations, and the rules and regulations of LARA, which includes and is not limited to all requirements that the Company and its members must abide by to hold any license issued by the State of Michigan.

121.    Both Operating Agreements provide that:

A Member being expelled by the Company is entitled to receive as a distribution in exchange for the Member's Membership Interest an amount equal to fifty percent (50%) of the . . . Book Value, as calculated pursuant to Section 6.6(b), based on figures for the fiscal year ending immediately prior to the year the written notice of expulsion is issued by the Company, as it pertains to that Member's Membership Interest.

122.    Both Operating Agreements provide that:

If the parties to the transaction do not agree on the calculation of Book Value, upon the demand of any party, the parties shall attempt to agree on the selection of a certified public accountant to be hired for the purpose of calculating Book Value (who may also hire a real estate appraiser for determining real estate values), and whose determination is binding on all parties. If the parties are unable to agree on the selection of a certified public accountant within fifteen (15) days after the demand, any party may demand arbitration pursuant to Section 11.1.

123.    Defendants breached the terms of the Operating Agreements by attempting to expel Mrs. Donovan from her membership in KDDS Enterprises LLC and Midori Products LLC where Mrs. Donovan did not engage in the conduct described in Paragraph 118 above.

124.    Defendants breached the terms of the Operating Agreements by attempting to expel Mrs. Donovan from her memberships in KDDS Enterprises LLC and Midori Products LLC with

disregard for the Operating Agreements' procedural mechanism for expulsion, distribution, and calculation of Book Value.

125.    As a result of Defendants' conduct, Mrs. Donovan has suffered financial losses and emotional distress as described herein.

**COUNT IV**
**MINORITY SHAREHOLDER OPPRESSION**
**M.C.L. 450.4515**
*(by Plaintiff Jennifer Donovan against all Defendants)*

126.    Plaintiff Jennifer Donovan incorporates the preceding allegations as if fully set forth herein.

127.    M.C.L. 450.4515 provides that a member of a limited liability company may bring an action to establish that acts of the managers or members in control of the limited liability company are illegal or fraudulent or constitute willfully unfair and oppressive conduct toward the limited liability company or the member.

128.    M.C.L. 450.4515(2) defines "willfully unfair and oppressive conduct" as "a continuing course of conduct or a significant action or series of actions that substantially interferes with the interests of the member as a member."

129.    Defendants engaged in willfully unfair and oppressive conduct towards Mrs. Donovan by, among other things, terminating her employment, holding a capital call with the intent to force her out of the companies, attempting to expel her from her membership in the companies, misrepresenting the Operating Agreements' formulas for calculating the Book Value of her shares, and misrepresenting the Book Value as zero.

130.    As a direct and proximate result of the individual Defendants' conduct, Mrs. Donovan has suffered financial losses and emotional distress as described herein.

**COUNT V**

**BREACH OF FIDUCIARY DUTY**
***(by Plaintiff Jennifer Donovan against all individual Defendants)***

131.   Plaintiff Jennifer Donovan incorporates the preceding allegations as if fully set forth herein.

132.   As Members of Midori Products LLC and KDDS Enterprises LLC, each individual Defendant owed a fiduciary duties of care, loyalty, and good faith to the companies' shareholders, namely Plaintiff Jennifer Donovan.

133.   The individual Defendants breached their fiduciary duties to Plaintiff Jennifer Donovan by, among other things, terminating her employment, holding a capital call with the intent to force her out of the companies, attempting to expel her from her membership in the companies, misrepresenting the Operating Agreements' formulas for calculating the Book Value of her shares, and misrepresenting the Book Value as zero.

134.   As a direct and proximate result of the individual Defendants' conduct, Mrs. Donovan has suffered financial losses and emotional distress as described herein.

**COUNT VI**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**29 C.F.R. 778.217**

135.   Plaintiffs incorporate the preceding allegations as if fully set forth herein.

136.   29 C.F.R. 778.217(a) provides:

Where an employee incurs expenses on his employer's behalf or where he is required to expend sums by reason of action taken for the convenience of his employer, section 7(e)(2) is applicable to reimbursement for such expenses.

137.   Pursuant to 29 C.F.R. 778.217, Defendants Midori Products LLC, and all individual Defendants, as corporate officers, were required to compensate Mr. and Mrs. Donovan where they were "required to expend sums of money solely by reason of action taken for the convenience of [their] employer."

138.    After terminating Mr. and Mrs. Donovan' employment, Defendants Benzie Provisions LLC and Midori Products LLC, and all individual Defendants, as corporate officers, refused to reimburse Plaintiffs for $27,492.73 worth of such expenses. (Ex. 1, Invoice)

139.    As a direct of Defendants' unlawful conduct, Mr. and Mrs. Donovan have suffered financial losses as described herein.

### COUNT V
### CONVERSION
### M.C.L. 600.2919(a)

140.    Plaintiffs incorporate the preceding allegations as if fully set forth herein.

141.    Plaintiffs acted in reliance on Defendant' express promise that they would reimburse them for business expenses during the course of their employment.

142.    After terminating Mr. Donovan's employment, Defendants Midori Products LLC, and all individual Defendants, as corporate officers, refused to reimburse Mr. and Mrs. Donovan for $27,492.73 worth of such expenses.

143.    As a direct of Defendants' unlawful conduct, Plaintiffs have suffered financial losses as described herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray this Honorable court enter Judgment against the Defendants, in whatever amount is fair, just and equitable for the injuries and damages so wrongfully sustained by the Plaintiffs including, but not limited, to compensatory damages, liquidated damages, punitive damages, exemplary damages, interest, costs and attorney fees and other damages as allowed in law or equity.

Respectfully submitted,

/s/  Noah S.  Hurwitz
Noah S.  Hurwitz (P74063)

20

HURWITZ LAW PLLC
Attorneys for Plaintiff
617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com

August 24, 2022

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JENNIFER DONOVAN and
DANIEL DONOVAN,

               Plaintiffs,                        Case No.
                                                 Hon.

v.

MIDORI PRODUCTS LLC,
KDDS ENTERPRISES LLC,
DAVID SEMAN, WILLIAM DEEDS,
RYAN RANDOLPH, RYAN COOK,
ADAM JAFFE, ANTHONY NUZZO,
EMILY HALES, and CASEY YOUNG,

               Defendants.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
Attorneys for Plaintiff
617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com
kara@hurwitzlaw.com

---

**<u>JURY DEMAND</u>**

      Plaintiffs, by and through their attorneys, HURWITZ LAW PLLC, hereby demand a trial

by jury of the issues in the above-captioned cause of action.

                                 Respectfully submitted,

                                 <u>/s/ *Noah S. Hurwitz*</u>
                                 Noah S. Hurwitz (P74063)
                                 HURWITZ LAW PLLC
                                 Attorneys for Plaintiff
                                 617 Detroit St., Ste. 125

Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com

August 24, 2022